## No. 24112.

International Union, United Mine Workers of America, an Unincorporated Association *v.* Public Utilities Commission of the State of Colorado, Henry E. Zarlengo, Howard S. Bjelland and Edwin R. Lundborg, Individually and Members Thereof, and Public Service Company of Colorado and Gulf General Atomic, Inc.

(463 P.2d 465)

Decided January 12, 1970.

V. G. Seavy, Jr., for plaintiff in error.

Dickerson, Barry & Dwyer, John R. Barry, James P. Hogan, for defendant in error Gulf General Atomic Incorporated.

Lee, Bryans, Kelly & Stansfield, Bryant O'Donnell, Robert F. Thompson, for defendant in error Public Service Company of Colorado.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Robert Lee Kessler, Assistant, for defendants in error Public Utilities Commission of the State of Colorado, Henry E. Zarlengo, Howard S. Bjelland and Edwin R. Lundborg, individually and members thereof.

*En Banc.*

Mr. Justice Hodges delivered the opinion of the Court.

THE plaintiff in error is the International Union, United Mine Workers of America (the Union). The defendants in error are (1) the Public Utilities Commission of the State of Colorado, and the individual members thereof (the Commission); (2) the Public Service Company of Colorado (Public Service); and (3) Gulf General Atomic, Inc. (Gulf Atomic).

Public Service filed its application with the Commission for a certificate of public convenience and necessity for authority to construct, operate and maintain a nuclear fueled electric generating plant to be built by Gulf Atomic and to be known as the Fort St. Vrian Nuclear Generating Station. Petitions to intervene, protests and statements in support were filed before the Commission by various parties, but only the Union was a party before the District Court and this Court in opposition to the application and grant of the certificate.

The Commission held hearings on four separate occasions and thereafter granted the application of Public Service. The Union filed an application for rehearing which was denied. A subsequent motion filed by the Union before the Commission to stay or suspend the decision was also denied.

The Union obtained writ of certiorari in the District Court in and for the City and County of Denver. The cause was heard by that court which entered its findings, order and judgment affirming the decision of the Commission. The Union now prosecutes this writ of error to this Court. It urges reversal on the grounds that

(1) There was a lack of competent evidence before the Commission upon which the economic feasibility of this project could be determined, and

(2) This nuclear generating facility would constitute an undue risk to the health and safety of the general public necessitating a refusal to authorize its construction.

The public convenience and necessity of an additional generating plant for Public Service was not challenged.

The Commission prefaced its findings and order with certain introductory remarks in which it said:

"Before turning to the position and allegations of certain of the protestants and intervenors, we here observe that the record firmly discloses, and we so find, that public convenience and necessity requires the construction of additional generating capacity by Applicant. . . .

"None of the above parties [intervenors and protestants] presented any substantive evidence attacking the economic feasibility of the facilities Applicant proposes to construct, although there was extensive cross-examination of Applicant's witnesses on this subject. The record demonstrates that the proposed plant can reasonably be expected to generate electrical energy at a cost at least comparable to the expected cost from a fossil-fueled plant . . . . A principal witness of the United Mine Workers stated that nuclear plants might represent possible savings, and further testified that a substantial portion of future generating plants would be powered by nuclear energy."

After noting that the economic feasibility of the nuclear plant was dependent upon many factors which might possibly change in the future, the Commission stated:

"The record is, however, barren of sufficient evidence which would require this Commission to find that a nuclear power plant as proposed by Applicant is not economically feasible. However, it is also clear on the face of the hearing record that the comparative economic advantages to the Applicant of constructing and operating the proposed facility, as against a conventional one, would be negligible, if any."

The Commission then found that the economics of the project were not unreasonable and that there was no evidence in the record concerning safety which would cause it to reject the proposed project as unsafe or which would constitute an undue risk to the health and safety of the people in the area. In this respect, the record reveals the presentation of evidence concerning many

safety features which will be incorporated into this plant, which also must adhere to many other safeguards required by the Atomic Energy Commission.

The Commission thereafter granted the certificate subject to the condition that in any future proceedings involving rates or valuation of Public Service, it could disallow portions of the investment and operating expenses which were excessive due to the plant being nuclear fueled rather than fossil fueled, if the allowance of such portions would adversely affect the rate payer.

I.

The Union contends the Commission erroneously granted the certificate of public convenience and necessity for the proposed plant because the record lacks competent evidence upon which the economic feasibility of the project could be determined.

█ In *B.D.C. Corporation of Colorado v. PUC*, 167 Colo. 472, 448 P.2d 615, we held:

". . . It is so elemental that it is now no longer necessary to cite authority therefor that if there is competent evidence in the record on which the Commission's decision has been based, the reviewing court will not disturb the Commission's findings or substitute its own judgment for that of the Commission."

From the record and the Commission's findings, it is clear that neither a fossil fueled plant nor a nuclear fueled plant has a clear or distinct economic advantage over the other. The testimony was that it was contemplated a nuclear fueled plant would save .02 of a mill per kilowatt hour of electricity generated over a fossil fueled plant. If the rule were that one type of plant must have a clear or overwhelming economic advantage over the other, then in a situation such as presented here, the Commission would be precluded from granting a certificate for either type of plant.

██ Economic feasibility must be determined, of course, by conditions and technology that exist at the time of the application. Changes in technology, pollution-

emission regulations, and cost of fuel may in the future make even fossil fueled plants economically unfeasible but possible future conditions would not justify the Commission's refusal of a certificate to build the same. Simply stated, unknown future events cannot be determinative of the issue of present economic feasibility.

As evidenced by the record and noted by the Commission, the Union presented no evidence on the question of economic feasibility. A recitation of all the evidence of economic feasibility in support of the Commission's findings, conclusions, order and grant of the certificate would unduly burden this opinion. We are convinced there is sufficient competent evidence in the record to support the Commission's findings and conclusion that the proposed project is economically feasible.

## II.

The Union claims the operation of the proposed plant would constitute an undue and wholly unnecessary risk to the health and safety of the general public. The main thrust of the Union's argument deals with the safety of the retainer vessel of the plant which encloses the nuclear core and heat generating facilities of the plant. The retainer vessel is of a design used in a number of plants in Europe although the Fort St. Vrain plant will be the first facility in the United States to utilize the design. The Atomic Energy Commission has approved the use of the design for the proposed plant.

There was an abundance of evidence submitted by Public Service regarding the safety of the proposed plant. Dr. Cowan, a witness for the Union, testified that it was not "inconceivable" or "impossible" that the retainer vessel might be breached, but gave no testimony why he thought it would be. He also testified he could not say the plant was absolutely safe nor could he say it was unsafe. When asked if he considered the plant as safe as humanly possible, he stated: "As safe as practicably possible, yes, under the present-day technology, yes." Dr. Cowan admitted that what he meant by all of his

testimony was that anything built by man carries with it the possibility of failure.

No technical refutation of the reliability and adequacy of the safety features to be incorporated in the plant was presented. Nor was there any testimony that the proposed plant was of faulty design. The most that can be said of the evidence of the Union is that it did not contradict the evidence of Public Service on this question but was an attempt to raise questions about the conclusions to be drawn therefrom.

It is not enough to oppose responsible and competent engineering design with vague objections, conjecture and speculation. From the evidence presented, it appears that provisions have been made for all reasonably foreseeable risks to health and safety. This is the proper standard. It was applied by the Commission in its resolution of this issue.

The judgment is affirmed.